## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No. 11-35350

CHARLES G. HALL
STEPHANIE D. HALL

          Debtors


      R & L PRICECORP LLC

            Plaintiff

     v.                                                        Adv. Proc. No. 12-3026

CHARLES and
STEPHANIE HALL

           Defendants


## M E M O R A N D U M


**APPEARANCES**:   WILLIAM E. MADDOX, JR., ESQ.
                Post Office Box 31287
                Knoxville, Tennessee  37930
                Attorney for Plaintiff

                MAYER & NEWTON
                 John P. Newton, Jr., Esq.
                 1111 Northshore Drive
                 Suite S-570
                 Knoxville, Tennessee  37919
                 Attorneys for Defendants


**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court on the Complaint as to Dischargeability of a Debt (Complaint) filed by the Plaintiff, R & L Pricecorp LLC, on March 5, 2012, asking the court to award it a judgment against the Defendants and for a determination that the judgment is nondischargeable under 11 U.S.C. § 523(a)(6) (2006).  The trial was held on April 8, 2013.  The record consists of seventy-three exhibits entered into evidence and the testimony of six witnesses, Lucinda Price, Anthony Nicely, Chelsea Price, James Russell Price, and the Defendants, Stephanie Hall and Charles Hall.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(I) (2006).

# I

The Plaintiff, R & L Pricecorp LLC, is a limited liability company formed by James Russell Price and Lucinda Price, the managing members, for the purpose of owning and leasing residential property located at 9213 West Springs Drive, Knoxville, Tennessee (West Springs Drive Property). Prior to the transfer of the West Springs Drive Property to the Plaintiff, it was owned and occupied by the Prices and their two children.  It is undisputed that in October 2008, when the Plaintiff first made the West Springs Drive Property available to rent, both the exterior and interior of the house were in a pristine condition with all appliances spotless and fully functional.  *See* TRIAL EXS. 6-33.

On October 28, 2008, the Defendants entered into a Real Estate Lease with the Plaintiff whereby they agreed to rent the West Springs Drive Property at a monthly rate of $1,500.00 for a term of one year, from November 14, 2008 through November 13, 2009.  COLL. TRIAL EX. 4.  Under the terms of the Real Estate Lease, no more than 6 persons were to reside in the West Springs Drive

2

Property without prior written consent of the Plaintiff, and the Defendants agreed to allow access to the premises "once monthly to spray for insects." COLL. TRIAL EX. 4 at 1. The Defendants additionally paid to the Plaintiff a security deposit in the amount of $1,500.00 and a pet deposit in the amount of $500.00, with "[a]ny damage caused by pets and not adequately repaired to the satisfaction of the landlord [to] be taken out of the Tenant's Security Deposit." COLL. TRIAL EX. 4 at 1. A second Real Estate Lease was signed by the parties on October 19, 2009, extending the rental period through October 14, 2010, and reducing the rent to $1,300.00 per month. COLL. TRIAL EX. 4.

The Defendants vacated the West Springs Drive Property on October 31, 2010. On the same night, Mr. and Mrs. Price, on behalf of the Plaintiff, entered the residence and discovered significant damage to the West Springs Drive Property including extensive damage to the carpets, doors, walls, and windows, untreated mold and mildew growth, and broken appliances. More specifically, the house was filthy, wreaked of urine, and contained animal feces on the carpet, stairs, and a wall, there was writing on one of the walls in what appeared to be permanent ink and there were, among other things, missing and broken Levolor blinds, a broken dishwasher, a damaged stove, a damaged kitchen sink and damaged flooring. *See* TRIAL EXS. 34-57.[1]  In sum, the West Springs Drive Property had been trashed and was not in a liveable condition.

In May 2011, the Plaintiff, through the Prices, requested reimbursement of the repair costs totaling $15,740.00 from the Defendants. TRIAL EX. 77. The Defendants disputed that they were liable for a majority of the costs requested by the Prices and counter-offered to pay $4,275.00. TRIAL

---

[1] Words cannot do justice to the deplorable condition in which the West Springs Drive Property was left when vacated by the Defendants. The pictures set forth in these exhibits tell the story.

3

EX. 78.  Thereafter, the Prices filed a Civil Warrant in their individual names commencing a civil action styled *Price v. Hall*, No. 93812G, against the Defendants in the Knox County General Sessions Court seeking "damages to rental property $15,000 (estimated)." TRIAL EX. 2.  Following continuances in June and July 2011, the General Sessions Court Judge entered a default Judgment in favor of the Prices and against the Defendants in the amount of $15,000.00 (General Sessions Court Judgment) on August 29, 2011.  TRIAL EX. 2.

On November 29, 2011, the Defendants filed the Voluntary Petition commencing their Chapter 7 bankruptcy case, listing as an unsecured debt in the amount of $15,232.00 the Judgment in favor of the Prices in Schedule F - Creditors Holding Unsecured Nonpriority Claims.  TRIAL EX. 5.  The Plaintiff, who is the real party in interest, timely filed the Complaint initiating this adversary proceeding on March 5, 2012, averring that the Defendants willfully and maliciously damaged the West Springs Drive Property, which formed the basis of the Prices' General Sessions Court Judgment.  Based upon these averments, the Plaintiff seeks a judgment for compensatory and punitive damages along with a determination that the judgment is nondischargeable.  The Defendants deny the Plaintiff's allegations as well as its entitlement to the entry of a nondischargeable judgment against them.  Pursuant to the amended Pretrial Order entered on November 15, 2012, the issue to be decided by the court is whether the Defendants willfully and maliciously injured the West Springs Drive Property and, if so, whether the debt is nondischargeable under § 523(a)(6).[2]

---

[2] The initial Pretrial Order entered on June 21, 2012, recited that the court would not be called upon to award damages based upon the General Sessions Court Judgment; however, because that judgment was in favor of the Prices and not the Plaintiff herein, upon the motion of the Defendants, the court amended the Pretrial Order and has been called upon to award damages, if any.

4

## II

The dischargeability of debts is governed by 11 U.S.C. § 523, which, as material to this adversary proceeding, provides that "(a) [a] discharge under section 727[3], . . . of this title does not discharge an individual debtor from any debt— (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]"  11 U.S.C. § 523(a)(6).  Section 523(a) is construed liberally in favor of debtors and strictly against the party seeking the determination of nondischargeability, who also bears the burden of proving the necessary elements by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L.Ed.2d 755 (1991); *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).  Additionally, the bankruptcy court possesses the authority to adjudicate the Plaintiff's claims and to award a monetary judgment inclusive of compensatory and punitive damages, costs, interest, and attorney's fees.  *See Cohen v. de la Cruz*, 523 U.S. 213, 223, 118 S. Ct. 1212, 1219, 140 L.Ed.2d 341 (1998); *Morsey v. Semer (In re Semer)*, 2012 WL 2998783, at *7, 2012 Bankr. LEXIS 3460, at *19 (Bankr. N.D. Ohio July 23, 2012); *Hancock Bank v. Harper (In re Harper)*, 475 B.R. 540, 550 (Bankr. S.D. Miss. 2012); *Belfor USA Grp., Inc. v. Hopkins (In re Hopkins)*, 469 B.R. 319, 324 (Bankr. W.D. Mo. 2012); *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 759 (Bankr. E.D. Tenn. 2003) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir. 1993)).

---

[3] Chapter 7 debtors receive a discharge of pre-petition debts, "[e]xcept as provided in section 523 of this title," 11 U.S.C. § 727(b) (2006), thus accomplishing Chapter 7's primary goals of relieving "honest but unfortunate" debtors of their debts and allowing them a "fresh start" through this discharge.  *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654, 659, 112 L.Ed.2d 755 (1991); *Buckeye Ret., LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (citations omitted).  The Defendants received a general discharge of their debts on May 30, 2012.

For a debt to be nondischargeable under § 523(a)(6), the Plaintiff must prove both the existence of "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury[,]" *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977, 140 L.Ed.2d 90 (1998) and that the Defendants either desired to cause the consequences of their actions or believed with reasonable certainty that such consequences would occur. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). "That a reasonable debtor 'should have known' that his conduct risked injury to others is simply insufficient. Instead, the debtor must 'will or desire harm, or believe injury is substantially certain to occur as a result of his behavior.'" *Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002) (quoting *Markowitz*, 190 F.3d at 465 n.10). Additionally, "the injury must invade the creditor's legal rights." *Steiner v. Best (In re Best)*, 109 Fed. Appx. 1, 6 (6th Cir. 2004). Accordingly, based upon Sixth Circuit authority, "unless the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz*, 190 F.3d at 464; *Kokenge*, 279 B.R. at 543 (citations omitted). "Lack of excuse or justification for the debtor's actions will not alone make a debt nondischargeable under § 523(a)(6)." *S. Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006). In other words, nondischargeability under § 523(a)(6) requires proof that the Plaintiff was injured and the Defendants' deliberate or intentional actions caused its injury, but "[m]ere negligence is not sufficient to except a debt from discharge under § 523(a)(6)." *Cash Am. Fin. Servs. v. Fox (In re Fox)*, 370 B.R. 104, 119 (B.A.P. 6th Cir. 2007).

"Although the 'willful' and 'malicious' requirements will be found concurrently in most cases, the terms are distinct, and both requirements must be met under § 523(a)(6)." *Lupo*, 353 B.R. at 550. "An act will be deemed 'willful' only if it was undertaken with the actual intent to cause injury," *Fox*, 370 B.R. at 119, requiring the court to "'look into the debtor's mind subjectively' in order to determine whether the debtor intended to cause the consequences of his act or believed that the consequences were substantially certain to result from his act[.]" *Monsanto Co. v. Wood (In re Wood)*, 309 B.R. 745, 753 (Bankr. W.D. Tenn. 2004). "The injury [caused] itself must be deliberate or intentional, not just a deliberate or intentional act that leads to injury." *Advantage Bank v. Starr (In re Starr)*, 2012 WL 4714978, at *12, 2012 Bankr. LEXIS 4637, at *37 (Bankr. N.D. Ohio Oct. 2, 2012). On the other hand, "[a]n act is 'malicious' if it is undertaken 'in conscious disregard of one's duties or without just cause or excuse' ... [and does] 'not require ill-will or specific intent to do harm.'" *Fox*, 370 B.R. at 119 (quoting *Wheeler v. Laundani*, 783 F.2d 610, 615 (6th Cir. 1986)); *see also Ewers v. Cottingham (In re Cottingham)*, 473 B.R. 703, 709 (B.A.P. 6th Cir. 2012). "The conduct 'must be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from . . . legal rights. [K]nowledge that legal rights are being violated is insufficient to establish malice . . . .'" *Best*, 109 Fed. Appx. at 6 (quoting *In re Mulder*, 306 B.R. 265, 270 (Bankr. N.D. Iowa 2004)). Maliciousness may be proved by a showing that "(1) the [defendant] has committed a wrongful act, (2) the [defendant] undertook the act intentionally, (3) the act necessarily causes injury, and (4) there is no just cause or excuse for the action." *Adamovic v. Lazarevic (In re Lazarevic)*, 2012 WL 4483901, at *21, 2012 Bankr. LEXIS 4508, at *57 (Bankr. E.D. Tenn. Sept. 27, 2012) (quoting *JPMorgan Chase Bank, NA v. Algire (In re Algire)*, 430 B.R. 817, 823 (Bankr. S.D. Ohio 2010)).

During the time the Defendants occupied the West Springs Drive Property, they had as many as eight people living in the house, including the Defendants, five minor children, and Mrs. Hall's brother. In addition, the Halls had three dogs and a cat, and Mrs. Hall's brother had a dog. The record reflects and the Defendants do not dispute that the West Springs Drive Property was in excellent condition when their occupancy began in November 2008, but that it was not in the same condition when they vacated it on October 31, 2010, although they offered no credible testimony explaining the deplorable condition of the house at that time. Clearly, the damage was willful in that, to the extent it was not caused by their own actions, they were able to see the damage as it was occurring and did nothing to prevent it from happening, nor did they take action to remedy the damage as it occurred. As previously stated, the photographs showing the extent to which the West Springs Drive Property was damaged are shocking and beyond the consciousness of the court. Accordingly, the court also finds the Defendants' actions to be malicious in that they allowed the West Springs Drive Property to be damaged "in conscious disregard" of the Plaintiff's rights.

Based upon the record, the court finds that the Plaintiff has proved by a preponderance of the evidence that it is entitled to a nondischargeable judgment against the Defendants for willful and malicious injury under § 523(a)(6).

## III

It is well settled that a party seeking damages bears the burden of proving entitlement thereto, and damages may not "be based on mere conjecture or speculation. . . . Evidence required to support a claim for damages need only prove the amount of damages with reasonable certainty."

8

*Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999); *see also Western Sizzlin,*

*Inc. v. Harris*, 741 S.W.2d 334, 336 (Tenn. Ct. App. 1987).  The Plaintiff, through the testimony of

Mrs. Price and Mr. Nicely, has established its entitlement to compensatory damages in the amount

of $14,003.36.  The court need not reiterate every repair made or every appliance replaced.  Specific

repair and replacements made by Mr. Nicely which the Prices paid on behalf of the Plaintiff totaling

$6,565.00 are itemized in detail on Trial Exhibits 58 through 61.   Other expenditures totaling

$5,613.36 were paid by the Prices on behalf of the Plaintiff to Dayton's Pest Control ($135.00); The

Home Depot ($603.24); The Home Depot Special Services ($717.55); Walmart ($103.74); Best Buy

($537.04); Lumber Liquidators ($1,695.00); and Stone Creek Surfaces, LLC ($1,821.79).  TRIAL

EXS. 58-68, 70, 79.  Additionally, the Prices were unable to produce receipts documenting additional

expenses in the amount of $1,825.00 which the court, based upon Ms. Price's undisputed testimony,

nonetheless finds were attributable to repairs of the West Springs Drive Property.  However, because

the Defendants paid the $500.00 pet damage deposit and $1,500.00 security deposit at the inception

of the Real Estate Lease on October 28, 2008, this amount must be offset against the damages.

Accordingly, the Plaintiff is entitled to recover $12,003.36 in compensatory damages from the

Defendants.

The Plaintiff also seeks damages under the terms of the Real Estate Lease for $12,000.00,

representing $1,500.00 per month for the eight-month period during which the West Springs Drive

Property was unoccupied and unavailable to lease while it was being repaired.[4]  The court agrees that

the Plaintiff is entitled to lost rent for this eight-month period because the willful and malicious

---

[4] Ms. Price testified that the Plaintiff again leased the West Springs Drive Property on July 1, 2011, but that the
rental rate was reduced to $1,100.00 because not all repairs had been made.

actions of the Defendants were the reason the West Springs Drive Property was uninhabitable. However, the court fixes those rentals at $10,400.00, representing the $1,300.00 monthly rent the Defendants were paying under the terms of the second Real Estate Lease entered into by the parties on October 19, 2009.  Therefore, the total damages to which the Plaintiff is entitled amount to $22,403.36.

The Plaintiff also seeks punitive damages against the Defendants.  "The purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter others from committing similar wrongs in the future."  *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 906-07 (Tenn. 1999).  Under Tennessee law, punitive damages may be assessed only in cases where "a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).

> A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result.  A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation.  A person acts maliciously when the person is motivated by ill will, hatred, or personal spite.  A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.

*Hodges*, 833 S.W.2d at 901 (citations omitted).  Because punitive damages are warranted in only the most egregious of cases, and "[t]o accomplish the twin purposes of punishment and deterrence," a defendant's intentional, fraudulent, malicious, or reckless conduct must be proved by clear and convincing evidence.  *Metcalfe v. Waters*, 970 S.W.2d 448, 451 (Tenn. 1998); *Hodges*, 833 S.W.2d at 901.

10

The court finds the record reflects by clear and convincing evidence that the actions of the Defendants were egregious and warrant an award of punitive damages which is fixed at $3,000.00. "Section 523(a)(6) 'does not distinguish between debts which are compensatory and those which are punitive. The language of section 523(a)(6) is directed at the nature of the conduct which gives rise to the debt, rather than the nature of the debt.'" *Abbo v. Rossi, McCreery & Assocs., Inc. (In re Abbo)*, 168 F.3d 930, 931 (6th Cir. 1999) (quoting *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 745 (8th Cir. 1991); *see also Hunter v. Lake Cumberland Reg'l Hosp., LLC*, 2012 WL 4601717, at *4, 2012 U.S. Dist. LEXIS 146141, at *14 (E.D. Ky. Sept. 28, 2012) ("[W]hen punitive damages are shown to arise from such conduct [to fall within the compass of § 523(a)(6),] they are also nondischargeable under § 523(a)(6)."); *The Spring Works, Inc. v. Sarff (In re Sarff)*, 242 B.R. 620, 627 (B.A.P. 6th Cir. 2000) ("Punitive damages stemming from the same 'willful and malicious injury' as a nondischargeable compensatory damages judgment are likewise nondischargeable.").

In summary, the court finds that the Plaintiff is entitled to a Judgment in the amount of $25,403.36, which will be nondischargeable under 11 U.S.C. § 523(a)(6).

A Judgment consistent with this memorandum will be entered.

FILED:  April 23, 2013

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

11